We are now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now back in session, the Honorable Robert D. McLaren presiding. Your Honors, the third case on the docket this morning is N. Ray, the marriage of Mario P. Majewski, Petitioner-Appellee, and Jolanta P. Majewski, Respondent-Appellant. Arguing for the Appellant, Mr. Matthew D. Elster. Arguing for the Appellee, Ms. Gina L. Colaluca. Thank you. Mr. Elster, you may proceed. Good morning again, Your Honors and Counsel. May it please the Court. My name is Matthew Elster of Biermann, LLP, and I represent the Appellant, Jolanta Majewski, who is present on the Zoom this morning. This is an appeal from a judgment for dissolution of marriage dissolving a nearly 20-year marriage, which contains myriad provisions which run afoul of the plain language of the Illinois Marriage and Dissolution of Marriage Act, which refer to nonexistent evidence, and which are internally inconsistent, contradictory, and draconian. The Appellant, Ms. Majewski, raises three issues on appeal, two of which concern the trial court's allocation and characterization of the party's marital estate, and the third of which relates to maintenance. And I will please Your Honors discuss the maintenance issue first. Maintenance was an issue throughout this case. In fact, it was an issue even after trial. Jolanta sought and received interim temporary maintenance during the proceedings, fought for it during trial, and even argued for it after trial but before judgments. The trial court mistakenly found that there was an agreement to waive maintenance, correct? Absolutely, Your Honor. There was no motion to reconsider that holding or that finding, correct? There was no motion to reconsider, correct, Judge. Does that affect our analysis at all? I don't believe it does. This is not a jury trial. Two 1203 motions are not required prior to filing an appeal following a bench trial. I was just curious as to why there was no motion to reconsider because it seemed like such an obvious grounds to file a motion. I can only speculate, Your Honor. I was not trial counsel, and I was not even the attorney who initially filed the notice of appeal on Ms. Majewski's behalf. But I can only assume that there were sound strategic reasons for doing so. But as Your Honor alluded to, in barring my client, a stay-at-home mother, during a 20-year marriage from ever seeking maintenance from her high-wage-earning husband, the trial court twice cited an agreement that didn't exist, which we believe is definitionally contrary to the manifest weight of the evidence, and went on to ignore the plain language of Section 504B1 of the Illinois Marriage and Dissolution of Marriage Act by simply making a cursory reference to, quote, the statutory factors set forth in Section 504 without making any Now, on this first point, the absence of an agreement, I don't think that you're going to hear any credible, or I don't think you're going to hear any argument today that that agreement does not exist. It is simply not found in the record. And, you know, when faced with this absence, what Mr. Majewski does is suggest that this error is harmless. I think that is a conclusion that this court cannot make for two reasons. First, you know, we cited this court's La Plume decision from several years back, which speaks to the fact that this court cannot know, cannot speculate what the trial court would have done had it not relied on this supposed agreement. And it's worth noting that paragraph six of the judgment is all of five lines long, and it references this supposed agreement twice, and does not contain any discussion of any of the other relevant factors. I think the only conclusion that the record permits is that the trial court placed significant, if not exclusive, emphasis on this non-existent agreement. Now, Mr. Majewski further argues, well, it doesn't really matter because my client was awarded a disproportionate share of the marital estate, 5% more of a marital estate, which the trial court didn't value and didn't properly value, which we'll get to. But a 5% delta in an overall marital estate, I do not believe warrants a bar for maintenance, and certainly the decision does not reflect this. The only authority cited for this... And he indicated she would never be able to ask for maintenance. It is a permanent, irrevocable bar. And that's part of the prayer for relief that we requested both in our opening brief and in our reply, which Mr. Majewski doesn't address at all, is that if this court is not going to outright reverse, it should at the very least send it back to the trial courts with instructions to reserve the issue if, as, and when Mr. Majewski starts earning income again, which we certainly believe that he will. Can you move on to your argument about dissipation? Absolutely, Your Honor. So dissipation, if you recall, my client filed her notice of intent to claim dissipation on August 30th, 2021, which under the plain language of Section 503D was well within the 30-day deadline for doing so. The starting point of this court's inquiry is that section itself, which governs dissipation, which is one party's use of marital assets for a non-marital purpose. Let me ask you this. Where in the notice of dissipation is there compliance with the requirements of 503D? The date of the period during which the marriage began, the irretrievable breakdown, identification of the property dissipated, the date or period of time during which the dissipation occurred. I mean, where do we find that in the notice of dissipation? Well, I believe that Ms. Majewski cited specific transactions, specific items of dissipation. And part of the problem that we had here, and if the record bears this out, are the great lengths to which my client had to go to get discovery from Mr. Majewski. On that point, on August 9th, the trial court entered an order allowing further depositions, but no further depositions were taken, correct? I would agree with that statement, yes. Nowhere in that order does the court say it's reopening or that discovery is reopened. It was limited to depositions and other information that Mr. Majewski was required to produce, correct? Didn't it extend it to August 23rd? 24 depositions. It extended, so it ordered Mr. Majewski to produce documents, which, you know, I would, I submit would be discovery, production of documents, Rule 214 by August 11th. And it extended the deadline to take depositions, which, again, under Rules 204 through 206 are oral discovery, through August 23rd. And to your prior question, Justice Burkett, I'm looking at the Notice of Intent to Claim Dissipation now, and it does list the date of, the date the marriage began to undergo an irritable breakdown, March 2017. It lists specific transactions from various accounts. So I do believe that it complies with the other, let's call them substantive requirements of Section 503, as well as the timing requirements. But the judge made a finding that it was fundamentally unfair because it was so late. Correct. And that finding is, that finding finds no support in the plain language of Section 503D. And the, to the extent that that was the court's ruling, you know, the language of the court used that there was no good reason and it was fundamentally unfair, that ruling exceeds the court's statutory authority. It is a test that it essentially enacted out of whole cloth to bar this dissipation claim. The court's ruling that it was fundamentally unfair is consistent with Hamilton, isn't it, from the Fifth District? And when the General Assembly revised the provisions or reenacted the provisions of the code, we presume that they were aware of Hamilton, correct? Well, I don't believe that Section 503 has been amended since Hamilton came out. 503's most recent iteration was January 1st, 2019. And Hamilton was a mid-2019 decision. But I would note Hamilton, Hamilton speaks to an opposite situation where, actually it speaks to a similar situation to the extent that trial had already begun. However, discovery had not, the dissipation notice was still filed within 30 days of the notice of discovery. After discovery was closed. Right, 30 days after discovery, within 30 days of discovery closure. Thank you, Justice. And what the Hamilton court found was that the dissipation notice was timely, period. That was the decisive utterance of that case. Then there was a year to conduct discovery. Right. So what happened? Trial started in early 2015. Wife filed her dissipation notice three days after that. And then the proceedings went on a year long sabbatical. So the parties can take more discovery and then resumed in 2016. And the issue was whether that 2015 notice was timely. The Hamilton court says that it was and it did so by strictly applying Section 503D. That should have been the beginning and end of the Hamilton inquiry. I would argue that what happened next, these notions of fairness is all dicta in as much as whether it was fair or not. The Hamilton court essentially says because it was timely, it was proper. And then it got into the remaining analysis. The Apple Apple Lee would have to prove that he was surprised by this, this claim. And was this claim brought up previously to the time you did within the within the 30 days? To the extent that the Hamilton test is correct and there is some surprise elements, I would say that it was satisfied here. And as we argued in our brief. You know, Mr. Majewski spending and why you had brought this up previously. I mean, actually, throughout the proceedings that this money was being spent and dissipated. That's correct, Your Honor. It should have come to come as no surprise to Mr. Majewski that dissipation was going to be an issue at trial. You know, the fact that the notice came late and I would add that part, you know, 100 and something thousand dollars in that notice over approximately 25 percent of it. Was information that Mr. Majewski only received. During that August time period, which happened to be, you know, bank statements going back to early 2020. So we're looking at almost over a full year that my client lacks discovery from Mr. Majewski portion, which was necessary to formulate her dissipation claim. But she was, you know, from the court's earlier orders, it was clear that she was concerned about dissipation, but never filed the notice until just two days before trial. And, you know, we don't have a transcript of the August 9th hearing when the court allowed additional depositions and some more information from Mr. Majewski, correct? That's correct, Your Honor. We only have the order. But where we don't have a record of proceedings, aren't we to presume that the trial court's determination as to what that order reflected is accurate? I think the order, the August 9th order speaks for itself. And what it states is that the motion to continue trial was denied. That's written, you know, Mario's to tender written documentation, written discovery to my clients by August 11th. And that the oral discovery deadline is continued to August 23rd. There's no representation in that order that Jolanta was going to file or intended to file a notice of dissipation, correct? There's nothing in that order. I agree, Your Honor, nor do I. And I know you weren't trial counsel, but if that was the intent, wouldn't that have been reflected in the order? Well, I don't know what the intent was or was not. Was there a 218 case management order done? There was initially, Your Honor, back at the beginning of the case, I want to say in 2020, there was an initial 218 order and that fell by the wayside relatively early on. I believe that was January 14th, 2020 was the initial 218 order. That was on page 277 of the record. And dissipation was mentioned, correct? December 4th, 2019 to 18 order mentioned at dissipation. Yes. But, you know, back to the issue at hand and Hamilton. And, you know, frankly, the plain text of Section 503 D. I'm not sure how Mr. Majewski gets around the fact and how the trial court got around the fact that discovery was, I'd say, indisputably still ongoing within 30 days of trial. You know, if anything, this presents a more compelling case in Hamilton because our dissipation notice was fired, filed prior to trial. And understand that trial was intended to commence on August 30th. It didn't start until September 8th, which, you know, yes, it's a week, but it's still not the middle of trial, which is what occurred in the Hamilton case. But in my mind, this is beside the point. Because there is no fairness requirement in the statute. In fact, prior to 2013, there was no timing requirements at all. Our legislature added that when it amended Section 503 in 2013. And the cases upon which Hamilton rests, Vancouver and the other ones, all existed prior to these amendments. Well, the allegation involved 15 instances of dissipation, involved three different accounts, different businesses, and an amount of approximately $455,428. And the trial court found that Mario simply didn't have sufficient time to prepare to respond to the notice of dissipation. And what's our standard of review? It's abuse of discretion, correct? Well, I would say it's de novo, Your Honor, because it's a question of whether or not the statute permits this, whether or not the court applied the proper standard. But if we follow the Fifth District, Hamilton, what is our standard of review? It's abuse of discretion, correct? I would agree with that, Your Honor. This wasn't an evidentiary ruling. It wouldn't be manifest weight. I would say abuse of discretion to the extent that the court properly applied Section 503D, which I don't believe that it did. Your time's up. Are there any other questions? Just briefly, with respect to allocation, you argue that the trial court failed to allocate the business accounts, but was the trial court ever provided a proper valuation? Whose responsibility is it to provide evidence of valuation? Both parties, Your Honor. It's both and none. There's ample case law, which we cite in our brief, that says a trial court cannot equitably allocate a marital estate without evidence of value. And, you know, frankly, it was incumbent upon both parties, either or both, to put on evidence of this. It's not simply one or the others. And the fact remains, there were six accounts. There was evidence of value for six accounts in the record. There was a citation answer issued by state, by Chase, in 2020, evincing six accounts in Mr. Majewski's name. His financial affidavit listed two of those accounts. The trial court divided all six, but did not give a value to any of them. In which case, I don't see how it could have effectuated the supposed 55-45 division, when not only did it have no evidence of value of these accounts, it also left $20,000 in equipment, marital tools, off the balance sheet entirely. Well, for that, there's clearly valuation in the record. Absolutely, Your Honor. Majewski said they were worth $20,000. Right. That's all I get. Simply the trial court's failure to allocate it or include it in its 55-45 division. Mary, do you have any questions? I have no further questions. Thank you, Mr. Elster. Thank you, Your Honor. I'll reserve my time for rebuttal. I have a question. Sir? Mr. Elster? Yes, Your Honor. I apologize. I'm usually the one that asks the questions last. I should have known after this morning. If I understand your argument, your argument is this. The statute has time protocols that your client complied with those time protocols, that there is no enunciation of fairness contained in the statute. And therefore, the trial court erred in determining and denying the filing of your petition on the basis of an element that is not contained in the statute, but what is contained in the statute you had complied with. Precisely, Your Honor. And if the statute was meant to contain such a requirement, such an escape valve, that's certainly something our General Assembly can include. Does it then imply or infer that if it was filed in compliance with the statute and the trial judge felt that there was insufficient time for the husband to respond, that the trial should have been continued as it was in Hamilton? I believe that would have been the appropriate remedy, Your Honor. I have no further questions. Any other questions? No. Thank you. Thank you. You'll have an opportunity to make rebuttal. Colaluka, is that how you pronounce your name? It is, Your Honor. Thank you. You may proceed, ma'am. Thank you. May it please the court, my name is Gina Colaluka. I represent the appellee, Mario Majewski, who's also present on Zoom. And, you know, as counsel indicated, we have three main issues here. Maintenance, dissipation, and the allocation of certain businesses. And for the reasons set forth in our brief and what I'll argue today, we're asking that this court affirm the circuit court's decisions on these issues. I'm also going to start with maintenance briefly. You know, they're arguing that the circuit court failed to engage in a sufficient analysis of the statutory factors. But I would argue that the court did, in fact, engage in these analysis and, in fact, did so twice. And something I want to point out about the statute is the statute does not say that these findings have to be in writing. And although it says that the court must refer to the factors, it does not say that the court is required to reiterate these factors verbatim. And it also does not say that the court has to reference every single factor, just the factors that the court finds that are relevant. Isn't the fact that the trial court made an error in saying that the parties agreed to waive maintenance? How can we decide what weight the court gave to any specific factor when he placed great weight on that fact that the parties had agreed that the waiver of maintenance and it would be permanent? There was no such request, correct? Or there was no such agreement? Well, there was no such agreement, but I think that error was harmless because the court did, in fact, still go through the analysis under the statute. There was two times that the court did this. The first was at that November 23rd, 2021 hearing. And that was the hearing that counsel alluded to that occurred after trial, but before judgment. And this was actually a hearing on support issues. There was a petition for rule pending that Ms. Majewski had filed for unpaid support. And there was a petition to modify those support obligations that Mr. Majewski had filed. And on that November 23rd, 2021 date, the court went through the analysis and determined, you know, Mr. Majewski would not be held in contempt and that the obligations, the support obligations would in fact be modified because he was not able to pay. And so there was actually quite an extensive analysis on the record if you go through the transcript on November 23rd of these factors. The second analysis actually does take place in the judgment that was entered on January 27th of 2022. And if you look at the judgment, there are several places throughout where the court makes specific findings with respect to the party's incomes, with the business failing, all of these factors that the court would otherwise needed to have considered with respect to this maintenance issue. So although the court did allude to an agreement that admittedly didn't exist, it's harmless in that the court still engaged in this necessary, you know, statutory factor analysis, such that not only can we rely upon that analysis to know what the court would have otherwise done if it hadn't, you know, mentioned this agreement, but we also know based on the evidence presented that it was the right thing to do. We don't know that it was right for the court to say maintenance is waived permanently, that you can never come back and ask for maintenance. We know that was an error, correct? No, we don't know that. Why not? Well, for a couple of reasons. And it was agreed on. Well, the fact that it was, there was this agreement that there would be no maintenance, that was an error, but it's harmless error because of the factual analysis that we have, but also... Forever? Forever? I do want to address this idea of reserving maintenance. The court cannot just reserve maintenance. If you look at the case law cited in counsel's brief regarding reserving maintenance, it's all pretty old. It's from the 1980s and early 90s. But we need to look at Section 401B of the Illinois Marriage and Dissolution of Marriage Statute. And Section 401B says a court cannot reserve issues just of their own accord. There's either got to be an agreement to reserve those issues between the parties, or if there's no agreement between the parties, someone's got to file a motion to reserve these issues. And I'm sure counsel is going to correct me if I'm wrong, but I don't recall seeing in the record that anybody had filed a motion or otherwise requested the court to reserve maintenance. At trial, the argument was, or really I should say, the maintenance was truly focused on during this November 23rd hearing. So that seems to be where the focus on the support issues took place as opposed to the trial. And during that hearing, there was no request for reserving maintenance. It was more so the argument is, my client should have done more to save the businesses, so he had the money to pay maintenance. It was kind of this quasi-imputation argument. And so because nobody actually said, hey, judge, why don't you just reserve maintenance, at least as far as I can tell from the record, I don't think the court could reserve maintenance under Section 401B, because the court doesn't have that authority to simply do it on their own. But he could say we can revisit it in a certain period of time. Well, I would argue that's reserving. Even to just say we're going to revisit, you're still reserving the issue, which results in a judgment that isn't final. And Section 401B deals with the finalities of these divorce judgments and says the court has to enter a final judgment unless we have a motion or an agreement. And there certainly wasn't an agreement, we all agree. Is there ever finality in a divorce judgment, Ms. Kalaluka? I'm sorry, could you repeat that? Is there ever finality in a divorce judgment? Well, with the post-decree issues, I get what you're saying. But in terms of finality for purposes of appeal, the court can't just reserve these issues on their own. And I don't recall seeing in the record that there was ever a request to actually reserve maintenance. And because of that, I don't think the court had the authority to do that. And so we can't hold that against the court. And I understand there was this error, but we do have the analysis. And when you look at the evidence, there was ample evidence to support the court's denial of maintenance. There was basically extensive testimony of all the cataclysmic events that not only led up to my client having to close his business, plug specialists, but that also kind of led to this divorce in general. And on top of that, you know, there was documentary evidence from the business had been sued. There was all the court orders and things of that nature. Maybe we should move on to another issue, Justice Burkett, Justice McClaren, whatever. Well, the valuation issue, would you concede that the trial court erred in not allocating the $20,000 worth of tools? I wouldn't only because I think that $20,000 figure is speculation. If you go back and you reread the transcript that they're referring to, the section of the transcript they refer to, when my clients questioned on the value of any assets of flood specialists, his initial answer is, I don't know. And then when you look at the $20,000 figure that they're kind of plucking out here, he specifically says, this is just a guess. So that $20,000 figure was only given after, you know, Ms. Majewski's trial attorney was pressing my client while on the stand. And he specifically says, this is a guess. And so I would argue that that $20,000 is speculation. And as we know, speculation is not real evidence. So I don't feel like the court was obligated to allocate this $20,000 because there's really no evidence that that $20,000 existed. What about his interest in Platinum Touch, Envy Prop, and Marvin Green? Well, Platinum Touch Industries, there was a lot of testimony and pretty ample evidence that they did not own Platinum Touch Industries. So the court couldn't allocate something that the parties didn't own. But it's your position that Jelena did not present enough evidence to say by a preponderance that Mario owned these companies or owned an interest in these companies? Correct. There really wasn't any evidence to show that Platinum Touch Industries was owned by the parties. And I don't think that it can be said that the court erred in failing to allocate that. With respect to Envy Pro, the evidence suggested that that company just no longer existed. It doesn't even matter whether they had an ownership interest in it or not. So you can't allocate something that doesn't exist anymore. And then with respect to Marvin Green, you know, same argument as Platinum Touch. But wasn't he inconsistent in his answers? I mean, he was really impeached by his answers in the depositions with respect to this business. Are you referring to Platinum Touch Industries? Yeah, I'm sorry. I thought it was Marvin Green, too, that he was inconsistent in in the questioning at the depositions and then what he tells the court. I mean, two different things, right? Well, Platinum Touch Industries, there was a period of time where he was considering purchasing it. And it was around the time of those depositions. And that is something that he testified to at trial that cleared up any kind of, you know, perceived inconsistency in his testimony. But essentially, that purchase never came to fruition. And that was actually corroborated by the testimony of Mr. Zendusa, who did, in fact, I believe he was the owner of Platinum Touch Industries and said, you know, we were thinking about selling to Mr. Majewski, but that sale ultimately never came to fruition. And there was a check written to Platinum Touch, correct? There were checks, but the testimony. I forget exactly what the testimony was, but there was testimony that indicated that wasn't for any kind of purchase. It was for, I believe it was work before borrowing labor. Yes. Yes. Borrowing some of their laborers and work performance. So there was some kind of relationship between the two businesses, but that does not mean the parties owned this business and there was no evidence of that. And so one thing I wanted to touch on with respect to these businesses as well, since it was mentioned earlier, is whether or not the court, you know, kind of failed to place a proper value on the accounts. And I just wanted to point out evidence was presented of the value of those accounts in the form of Mr. Majewski's financial affidavit. They were listed as approximately twelve thousand dollars. And I also wanted to point out that, you know, this citation exhibit they reference, it was actually never entered into evidence because we go back and look at the testimony. They weren't able to provide a foundation for it. My client had never seen that document before and there was no foundation. And so ultimately this, I believe it was exhibit number twenty four that was never entered into evidence. So when it came time for the judge to make a decision, all the court has is Mr. Majewski's financial affidavit, which says twelve thousand dollars. So there was a value at the time of divorce given. But even if there wasn't, I want to make it clear. And in particular, there's a case cited in counsel's reply brief Hittman. This case actually reiterates what was argued in my brief, which is that it's the party's obligations to provide evidence of value. And where no evidence of value is provided at the time of the divorce, the court cannot assign a value to those assets. It simply needs to divide them. And so to suggest that the court somehow needed to assign value to these assets and then divide them properly. The court, in fact, cannot do that. The court's a fact finder. The court doesn't have to provide this information. This information needs to be provided to the court. And if you look at Pittman, what the appellate court ultimately said is what the court should have done in absence of this evidence of value at the time of divorce is simply divided the accounts. Like the appellate court took no issue with the fact that the trial court wanted the parties to split that particular account 50 50. But where the court erred is when it assigned a specific value, when there was no evidence of specific value at the time of the divorce. So I just wanted to point that out as well. Who assigned the value of the tools? The value of the tools was that $20,000 that I referenced earlier. That is speculatory. So I don't think the circuit court could properly rely upon that figure, because if you look at the testimony my client gives, he specifically says this is a guess. Because when asked how much value do those tools have his initial responses. I don't know or something along those lines. He gave his best guess. He gave his best guess at that point. With respect to dissipation. I just wanted to point out in the Hamilton case this fairness analysis, it's not dicta, it was based on a several lines of cases that have required fairness throughout the history of, you know, law in dissipation. And I think it's, you know, unfair to say that the courts don't have equitable powers that the courts should disregard when something is fundamentally unfair. And where was, I'm sorry, go ahead. Jolanta asked for the renew her motion for continuance after providing the notice of dissipation. I'll be honest, Your Honor, I don't recall whether or not there was any kind of request for continuance. I know that she had filed a motion to continue the prior week but I don't believe that she suggested that this case be continued to provide Mr Medjewski with the time necessary to review her notice of dissipation. And I also don't think it's accurate or fair to suggest that Mr Medjewski was on notice of her allegations, simply because it's true that she mentioned dissipation earlier in the proceedings, it's in the order, we're not denying that. But there is a very big difference between writing the word dissipation on a piece of paper and then filling out the proper notice of dissipation under the statute. If you look at what the statute requires, you have to provide extensive details. Counsel argues that he did, or that Jolanta did provide the detail necessary to put the defendant on adequate notice. How do you respond to that? He did not do so until two days before trial. It's simply what my client wasn't given enough time to actually go back and meaningfully respond to those allegations. But wasn't she timely within the 30 days of the statute? She was timely. Could you have asked for continuance? Well, I would argue she wasn't timely because if you look at the January 21st 2021 order, the discovery closure date was July 15th, 2021, and she did not file that was extended, correct. I disagree that it was extended and so did the trial court. The August 9th 2021 order was really limited, and it was limited on two discovery issues. One was Mr. Majewski was ordered to turn over just some bank statements in a financial affidavit that he was previously ordered to turn over. That was simply an enforcement provision. That wasn't a discovery provision. With respect to the depositions, this was also really limited in that the deposition portion of that order was by agreement of the parties. They said, you know what, if we're going to take depositions, we're going to do it by August 23rd, but then no one actually took any depositions. So that wasn't something that the judge necessarily ordered on their own accord. That was an agreement of the parties. And I think it's important to point out that at no point in that court order does it say discoveries reopened. We just have this enforcement provision, and then this agreement between the parties to take depositions, which ultimately didn't happen. Nobody took any depositions. And so keeping all that in mind, the circuit court ruled that that August 9th order did not reopen discovery and I would agree, but I also think it's important to know. Your time is up. Okay. Are there any other questions? No. None. Thank you. Thank you. You can finish your thought though. Well, I was just going to say that even if the August 9th order reopened discovery we still have this fairness issue and it just wouldn't have been fair to my client. Thank you. Is it fair to deny someone to seek dissipation. If at the time, they sought to file the petition for dissipation was within the timeframe that a statute set forth, but ironically is determined to be denied on the basis of unfairness. And getting to the conclusion. Is it, is it fair or unfair to deny someone relief. When supposedly they've complied with a statutory protocol. I do think it's fair under certain circumstances and those circumstances were present here and that seems to be what Hamilton suggests the problem with your argument is, is that fairness comes in many different clothings and shades. And as I asked Mr Elster. Instead of quote unquote cutting off the wife's rights. The trial court should have preserved the husband's rights and granted a continuance in order to allow come to honor the provisions of the statute. If you are going to cite unfairness as a way in which to deny a right under a statute, aren't you finding that unconstitutional because it violates due process. I wouldn't, especially in this circumstances because I don't believe either party requested a continuous so if either party doesn't request the continuance. Go ahead. The fact that people don't request things would suggest that judges are too stupid or ignorant or unsophisticated to actually work things out in a reasonable manner. It's like, well, I'm sorry nobody told me that this is what I should have done, like, nobody told me I should have continued the case because someone just had an appendicitis attack. I mean it's like your argument begs the question, either the court controls the court calendar, and the cases before it, or the parties, based upon their request to. And I thought you told us during your argument that the trial court does have the authority, and that's the reason why he denied it and that's the reason why he allocated it. It's like, I'd appreciate some consistency in your selective process to determine when a judge has the authority or the inherent authority to do things and not do things. So I don't respond because that wasn't necessarily a question. But the thing is, is that if both parties rights are to be preserved, then the simple solution is a continuous, it's not a denial, especially if the money involved is close to a half a million or even if it's $1,000, or even if it's $20,000. I have nothing further to say if you want to comment and respond that's fine but if you don't, and the judges don't have any other questions. We'll go back to Mr. Elster. Well, Your Honor, I just, I don't mean any disrespect with my argument, I just think, you know, when a court is faced with a trial date, especially in these days when trial dates are hard to come by. I don't think they want to continue, especially without a request on file. That's, that's all I'll say. I have just one comment Mr Elster can respond to this from the bottle. We have to keep in mind the purpose of discovery and timeframes of discovery are all important, regardless of what the statute says there is also discovery obligations and fairness requirements embodied in the marriage and dissolution act. That's all. Thank you, Mr Elster, you may proceed. Thank you, Your Honor, so I'll try to be brief I have a few points but I want to address Justice Burkett's point first the purpose of discovery and the purpose of trial is the truth seeking process to ascertain the truth, and as much of the truth as possible to get to the correct results. The trial courts ruling was inimical to that. And you know something we didn't talk about not only did a bar my client from putting on from from from proceeding on her dissipation notice. Was there an offer of proof made? You took the words out of my mouth Justice Shastak it barred her from putting on an offer of proof that was on page. I think 264 in the record. She tried her counsel said I'd like to put on an offer of proof to preserve this issue for appeal trial court said no you cannot put on an offer of proof. You want to talk about fairness, I mean this is a nearly half million dollar dissertation claim that not only the trial court refused to consider she refused he refused to let your honors consider it. You know, next point, these accounts, you know, counsel says the trial court had evidence of value. There were three accounts listed on Mr Medjewski's financial affidavit, six accounts were listed in the citation response, six accounts were also listed on the agreed turnover order, all of this information was put into evidence it was in the record. Under Pittman. Look at what happened in Pittman the truck the appellate court reversed and said you have to go back to the trial court for evidence of value. And that's what should happen here with these accounts and certainly with respect to the $20,000 in tools, far from speculation. Mr Medjewski testified under oath. It's an estimate but they're worth about $20,000. You know we're not talking about a bank account where you can look at and say there's $19,837 and 53 cents they're tools. I don't know how much more specific you need to get. Regarding platinum touch and these other businesses. All I'm going to say is Mr Medjewski was impeached four or five times with this sworn deposition testimony. This wasn't a perceived inconsistency like counsel says the man testified under oath and another case going on almost contemporaneously that he owned and operated this business. And you know, there was no reference to it whatsoever in the trial courts decision. You know, certainly it could have said, I find he doesn't own it, it didn't even do that. I think that would have been against the manifest way to the evidence of the fact is there's no reference to it whatsoever in the judgments. Same with Marvin green and these other businesses. These are issues that were subject to significant testimony a trial and went completely unmentioned. Finally, on the issue of maintenance. This is not a harmless error. There's nothing in the record which permits such a conclusion. The trial court place. The only thing we know is the trial court place significant emphasis on the supposed agreement to the parties which appeared twice in a one paragraph ruling. You know what happens on 1123. That was a summary hearing, it was argument on contempt and on modification, neither of which implicates the statutory factors necessary for the court to consider a trial. And certainly the court didn't take any evidence at that 1123 21 hearing which would have permitted it to make findings findings which do not appear anywhere in its judgment. As for the reservation issue. Your honors need look no farther than section 504 be to sub three. What does that section say. In each case involving the issue of maintenance the court shall make specific findings of fact, as follows, three, the court shall state whether maintenance is fixed term indefinite reviewable or reserved. The statute explicitly authorizes reservation. And to the extent that maintenance is not awarded outright it was incumbent upon the courts to consider it. So when counsel says the court was powerless to do that without the agreement to the parties or request. She's simply wrong and frankly, why would my clients request a reservation of maintenance. When she was actively seeking an award of maintenance, not maintenance in the future she wanted maintenance now. And relying upon a non existent agreements, which we all now agree doesn't exist. The court forever barred her from seeking that. Mr. Also I just have one question. Was there a renewed motion to continue. After the notice of dissipation was filed. There wasn't your honor but I would point you back that my client filed a motion to continue the trial. About two weeks prior to that August 9 that was the most right I would submit that point was that if it, you know, we were blaming the court for not continuing the case without a motion to continue. That's really unfair to the trial court isn't it. Well I'm not blaming the court for doing that but I would say that any trial lawyer who, you know, on the heels of having a motion to continue trial denied files another one two weeks later. I think he'd be doing a disservice to his client I think that, you know, that would have been based upon the disclosure that this new information that your client has just received bolstered her claim of dissipation. Perhaps but again that from trial counsel but that's what I would have done, but I would say from my client's perspective and under the plain terms of 503 D. The dissipation notice was timely. So, I think it was incumbent upon anybody to request the continuance to request more time it would have been Mr Medici. You did file your client did file a motion, or at least make an attempt to make an offer of proof. Correct. Correct. That was, was it denied. It was around it that was on the record there a motion to reconsider the denial made. There was not it was in the middle of trial. So the motion limit was granted on August 30 trial. I want to say trial proceeded on September 8. And at the close of my clients direct examination. Her attorney sought to go into the issue of dissipation. And he said on page 264 to 266 of the record. I would like to make an offer of proof in the trial court said I don't know if an offer of proof regarding the substance of the notice of dissipation would be appropriate to a request is denied. So, again, it's, you know, this, I don't believe that reconsideration would have been necessary, or, you know, sound trial strategy in the face of that explicit ruling. The issue was preserved for appeal. Thank you. Any other questions. I have no further questions. Thank you. Thank you. We will take the case under advisement. And hopefully render a decision and have time. And Mr. Marshall, will you please close out the proceedings. Thank you, both counsel. Thank you for your time this morning. You're welcome.